IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIELLE C.[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

    Defendant.

Civ. No. 3:21-cv-01557-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Danielle C. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income benefits. Full consent to magistrate jurisdiction was entered on October 26, 2021 (Dkt. #3). For the reasons provided below, the Commissioner's decision is AFFRIMED.

## BACKGROUND

Plaintiff is a 34-year-old woman who alleges she is unable to work due to the effects of pars defect with spondylolisthesis of the lumbar spine, degenerative disc disease, fibromyalgia, endometriosis, interstitial cystitis, chronic pain, depression, anxiety and PTSD. Tr. 288-295. On December 11, 2013, Plaintiff protectively filed an application for supplemental security income alleging disability beginning September 1, 2004, Tr. 304, 339, 342, but later amended the alleged onset date of disability to November 20, 2013. Tr. 1624. The claim was initially denied on March

---

[1]In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

28, 2014, and upon reconsideration on August 12, 2014. Tr. 147-52, 165. Plaintiff requested a hearing before an ALJ on August 29, 2014. Tr. 168. Plaintiff appeared in person and testified at a hearing held on February 26, 2016. Tr. 204. ALJ Rebecca Jones found Plaintiff not disabled on August 31, 2016. Tr. 18-31. The Appeals Council denied review on December 5, 2017, making the ALJ's decision the final agency decision. Tr. 1-5, 214-25. Plaintiff appealed her case to the United States District Court, where the judge found that the ALJ had improperly rejected the opinions of Dr. Cole and Ms. Bauman, and improperly determined that Plaintiff's endometriosis was not severe. Tr. 1658-73. Accordingly, Judge Simon reversed the ALJ's decision and remanded the case to the Appeals Council, who remanded the case to the Hearings Office, with instructions for the new ALJ to:

> [A]ccept Dr. Cole's Dr. Cole's opinion and incorporate it into the RFC or provide legally sufficient reasons for its rejection; (2) accept LPC Bauman's opinion and incorporate it into the RFC or provide legally sufficient reasons for discounting it; (3) evaluate plaintiff's endometriosis as a severe impairment and incorporate any resulting limitations into the RFC; (4) conduct any additional proceedings as needed. Tr. 1673.

On June 25, 2021, ALJ Lynch issued a decision finding that Plaintiff was not disabled, despite Judge Simon's remand orders. Tr. 1579-94. Plaintiff now requests that the United States District Court review ALJ Lynch's decision and alleges harmful legal error. Pl.'s Br. 1-16.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

> 5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since November 20, 2013, the application date. Tr. 1582.

2. Plaintiff has the following severe impairments: pars defect with spondylolisthesis, lumbar spine; degenerative disc disease of the spine; fibromyalgia; endometriosis; depression; panic disorder; pain disorder; personality disorder; and post-traumatic stress disorder ("PTSD"). *Id.*

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.*

4. Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can understand and remember simple instructions, she can perform simple tasks, she should not work with the public, and she can have occasional interaction with coworkers. Tr. 1585.

5. The Plaintiff has no past relevant work. Tr. 1592.

6. Plaintiff was born on November 4, 1988, and was 25 years old, which is defined as a younger individual age 18-44, on the Plaintiff's amended alleged onset date. *Id.*

7. Plaintiff has at least a high school education. *Id.*

8. Transferability of job skills is not an issue because the Plaintiff does not have past relevant work. *Id.*

9. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including Document Preparer, Final Assembler and Addresser. Tr. 1593.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since November 20, 2013, the Plaintiff's amended alleged onset date. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's]

conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

6 - Opinion and Order

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ erred by failing to resolve the conflict between Dr. Cole's opinion and Ms. Bauman's opinion.
2. Whether the ALJ had a sufficient legal basis to reject the opinions of Dr. Cohen and Ms. Pfeiffer.

For the following reasons, the Court finds that the ALJ did not commit harmful legal error in evaluating Plaintiff's medical opinions regarding her impairments. The decision of the Commissioner is affirmed.

### I. The ALJ did not err in failing to fully resolve the conflict between Dr. Cole and Ms. Bauman's opinion regarding Plaintiff's ability to interact with coworkers and the public or respond appropriately to usual work situations and changes in routine work settings.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Because this case was initiated prior to March 27, 2017, the old medical rules apply for the ALJ's evaluation of medical opinion evidence.[2] Under the old rules, the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and

---

[2] This opinion contains case law applying the old medical rules, some of which have been superseded by statute, but are applicable to the case at hand.

7 - Opinion and Order

convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), as amended (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); Andrews, 53 F.3d at 1042-43. "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or non-examining physicians may serve as

8 - Opinion and Order

substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Plaintiff argues that the ALJ did not follow the remand order instructing the ALJ to resolve the discrepancy between Dr. Cole's opinion and Ms. Bauman's opinion. Pl.'s Br. 6. Dr. Cole's opinion was that Plaintiff has a marked limitation in her ability to respond appropriately to usual work situations and changes in a routine setting. Tr. 966. On the other hand, Ms. Bauman's opinion was that Plaintiff has mild to moderate limitations in responding to demands and adapting to changes. Tr. 3313. Both opinions regarding Plaintiff's limitations are immaterial in light of the full medical record. Though both medical opinions do conflict, the ALJ properly gave both opinions little weight with consideration of the full medical record, to be discussed in the following two sections. Therefore, the issue Plaintiff raises regarding the discrepancy between Dr. Cole and Ms. Bauman is immaterial. Furthermore, Plaintiff misstates the orders of Judge Simon. As previously stated, Judge Simon ordered ALJ Lynch to " (1) [A]ccept Dr. Cole's opinion and incorporate it into the RFC or provide legally sufficient reasons for its rejection; (2) accept LPC Bauman's opinion and incorporate it into the RFC or provide legally sufficient reasons for discounting it . . ." Tr. 1673. The ALJ has provided legally sufficient reasons for rejecting both opinions of Dr. Cole and Ms. Bauman.

   a. **Dr. Cole's Medical Opinion**

Dr. Cole, Ph.D., evaluated Plaintiff once on November 11, 2015 by a referral from the Oregon Department of Human Services. Tr. 968-975. Dr. Cole interviewed client, made behavioral observations, conducted a Wechsler Memory Scale-Immediate and Delayed Memory test, serial seven's, digits forward and backward, proverbs, basic arithmetic skills, determined the client's fund of general information, and conducted a Beck Depression Inventory-II test. Dr.

Cole also reviewed Plaintiff's records from the State of Oregon, Department of Human Services, Vocational Rehabilitation Division and Ms. Bauman, LPC. *Id.* From these tests and observations, Dr. Cole diagnosed the following: "Unspecified Depressive Disorder; Somatic Symptom Disorder, With Predominant Pain, Persistent – Moderate; Post-Traumatic Stress Disorder, With Dissociative Symptoms; Panic Disorder; and Rule/Out Unspecified Personality Disorder." Tr. 972. After this in-person evaluation, Dr. Cole filled out a Medical Source Statement of Plaintiff's ability to do work-related activities based on her mental status. Tr. 965. The ALJ is correct in pointing out that this medical opinion was offered in a check-box form and that the only support Dr. Cole provided was to see his psychodiagnostic examination, as previously mentioned. Plaintiff is also correct in arguing that the mere fact that an opinion is in a checklist format is not sufficient. However, Plaintiff is mistaken by referring to Dr. Cole's psychodiagnostic exam as "six pages of detailed explanations of his observations and conclusions." Pl.'s Br. 8. The only objective findings that Dr. Cole listed were under the headers "Current Medications, Additional Medical History, Mental Status and Test Findings, Diagnoses and Discussion and Recommendations." Tr. 971-973. The rest of the information in Dr. Cole's evaluation are reiterations of Plaintiff's subjective complaints and her perception of what her medical issues are, Tr. 968-970, which is not at issue.

Dr. Cole's statements on his evaluation report contradict what was checked on the medical source statement form. Dr. Cole stated that Plaintiff could benefit from psychological services and behavioral medication management considering her behavioral symptomatology. Tr. 972. Dr. Cole did note that Plaintiff exhibited problems in the areas of attention and concentration, and had below average immediate and delayed memory capabilities. *Id.* However, Plaintiff was able to sustain simple and multi-step simple tasks. *Id.* The only two factors that

10 - Opinion and Order

would affect Plaintiff's vocational success as listed by Dr. Cole is her anxiety and difficulty managing pain, Tr. 973, not responding to usual work situations, changes in a routine work setting, nor dealing with others.

An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it). "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Here, the ALJ did not simply ignore Dr. Cole's opinion, nor did he fail to give an explanation as to his findings. In fact, there is substantial evidence in the record supporting the ALJ's assertion that claimant got along with her coworkers and supervisors at her last job. When asked by ALJ Jones at her 2016 hearing if she had problems getting along with others, she said no. Tr. 75. When asked to recall when she was working if she had any problem getting along with supervisors or coworkers, Plaintiff answered "Not getting along with them, but it's like any other place where you have a rude coworker or somebody who just has an issue and they're not very respectful. So, I've had a couple situations like that." Tr. 76. Not only does this contradict Dr. Cole's medical opinion form, but it also supports the ALJ's statements that Dr.

11 - Opinion and Order

Cole did not note any behavior abnormalities, nor any adaptive deficits, and that generally his exam findings were normal. Tr. 1589. The ALJ did not err in stating that Plaintiff ended her last job primarily due to physical complaints. *Id.* Plaintiff did claim that standing all day at her job caused her a lot of pain. Tr. 883. Objectively, the pain from standing all day seems to be the main cause of Plaintiff telling the medical provider that the job "is not going to work out." *Id.* However, the ALJ using this part of the record to discount Dr. Cole's medical opinion was not harmful error because he accounted for Plaintiff's chronic pain in the RFC for a vocation that is primarily sedentary. Tr. 1587, 1593. Overall, the ALJ provided sufficient legal reasons to give Dr. Cole's medical opinions and findings little weight.

### b. Ms. Bauman's Medical Opinion

Ms. Bauman, LPC, has been Plaintiff's therapist since 2011. Tr. 811-15. In 2016 and 2021, Ms. Bauman completed Mental Residual Functional Capacity Assessments. Her diagnoses were Complex PTSD, ADHD, Cyclothymic Disorder, Persistent Complex Bereavement Disorder. Tr. 3312. Ms. Bauman opined in 2016 that Plaintiff had moderately severe impairments in her ability to work in coordination with or proximity to others without being distracted; her ability to complete a normal workday and work week without interruptions from psychologically based symptoms; her ability to interact appropriately with the general public or customers; her ability to get along with coworkers or peers without distracting them; and her ability to travel in unfamiliar settings and use public transportation. Tr. 1369. In 2021, Ms. Bauman opined that Plaintiff had "Marked" difficulties in her ability to keep social interactions free of excessive irritability, sensitivity, argumentativeness, suspiciousness; her ability to manage psychologically-based symptoms; and her ability to be aware of normal hazards and take appropriate precautions. Tr. 3312-14. Ms. Bauman also opined that Plaintiff would have extreme

limitations in her ability to use reason and judgment to make work-related decisions; her ability to sustain an ordinary routine and regular attendance at work; and her ability to work a full day. *Id.* The ALJ stated that these opinions were inconsistent with the record.

The ALJ lists numerous examples in the record where Ms. Bauman's opinions are contradicted by a consultative psychologist, Tom. Dooley, Psy.D, and others. Tr. 1590. For example, the ALJ discusses the issue of Plaintiff's ability to interact with the general public and/or customers. Tr. 1590. The ALJ stated that this opinion contradicted with the record that showed Plaintiff's behavior as largely normal on exam, and contrasted with her past employment history. *Id.* Dr. Dooley's observations also contradict Ms. Bauman's findings, as he states in his consultative exam report that "She rated her depression and anxiety at moderate levels. She stated she had average frustration tolerance, good concentration, and was only moderately distractible . . . [Plaintiff] gave her emotional distress in moderate levels. She has been an educational assistant for the last ten years off and on. Her prognosis for employment at this time appears to be fair to good." Tr. 2839. This evidence in the record sharply contrasts with Ms. Bauman's opinions that Plaintiff would be "extremely limited" in keeping a normal work schedule and using judgement to make work-related decisions. Tr. 3312-14. In fact, Dr. Dooley's findings show that Plaintiff did fairly well in college, stating that "she is not sure if she is going to return, but states she got A's and B's," when discussing her stent in college studying psychology, and could not give reason as to why she stopped. Tr. 2835, 2839. Being successful in college indicates that sound judgment and routines were exercised by the student, therefore Ms. Bauman's opinions are inconsistent with the record and the ALJ did not harmfully err in discounting them. Though the record in this case is plentiful at 3,314 pages and there could be more than one way to interpret such evidence, "[w]here evidence is susceptible to more than one

rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (citing *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). In conclusion, while Plaintiff asserts that the ALJ committed harmful error in failing to reconcile the differing opinions between Dr. Cole and Ms. Bauman, there is sufficient evidence in the record utilized by the ALJ to discount both medical opinions, thus the issue Plaintiff asserts is immaterial.

**II.    The ALJ properly evaluated the medical opinions of Dr. Cohen and Ms. Pfeiffer.**

The ALJ properly evaluated the medical opinions of Dr. Cohen and Ms. Pfeiffer and discounted their opinions in light of the entire record. Considering this case was filed before March 27, 2017, Federal Regulation 20 C.F.R. § 416.927 governs how to evaluate medical opinion evidence. The ALJ is required to consider the following factors: whether the source has examined the individual, how long the source has known and how frequently the source has seen the individual, the nature and extent of a treatment relationship, whether the source is a specialist in the relevant medical issues, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, and how well the source explains the opinion. 20 C.F.R.§ 416.927(c). The ALJ will consider medical opinion evidence alongside all relevant evidence in the record. 20 C.F.R.§ 416.927(b). The regulations instruct ALJs to consider "all of the available evidence" in evaluating the intensity and persistence of symptoms, including evidence from "medical sources and nonmedical sources" about the effect of a claimant's symptoms. 20 C.F.R. § 416.929(c)(1); *see also* SSR 16-3p, 2016 SSR LEXIS 4 (requiring ALJs to consider other evidence such as other nonmedical sources to evaluate symptoms). However, an ALJ is not required to articulate how evidence from nonmedical sources was considered using the requirements applicable to evaluations of medical opinions. *See* 20 C.F.R. § 416.920c(d). Rather, "[i]f the ALJ wishes to discount the testimony of lay

14 - Opinion and Order

witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

### a. The ALJ properly rejected the opinion of Ms. Pfeiffer.

Heather Pfeiffer, FNP, filled out a Physical Capacity Statement for Plaintiff in April 2021. Tr. 3280-84. The opinion revealed that Plaintiff should not sit, stand or walk for more than 2 hours in a typical 8-hour workday. Tr. 3280. Plaintiff, according to Ms. Pfeiffer, will need to take a break every two hours for at least 20 minutes to an hour due to her chronic pain, stress and insomnia. Tr. 3281-82. Ms. Pfeiffer also opined that plaintiff must elevate her legs for 50% of a typical workday and cannot lift more than 20 pounds. Tr. 3282.

The ALJ properly dismissed these opinions by claiming inconsistency with the entire record. Tr. 1590. Ms. Pfeiffer is not an acceptable medical source under the regulations applied to this case and the ALJ therefore did not have to provide a "legitimate reason for rejecting these limitations" as Plaintiff asserts. Pl.'s Br. 10. "An ALJ may reject the opinion of a non-acceptable medical source, such as a nurse practitioner in this case, by giving reasons germane to the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Providing "germane reasons" is a lower standard than that used in credibility determinations. *Childress v. Colvin*, 2014 U.S. Dist. LEXIS 168377, *11. This lower standard was met by the ALJ. The ALJ stated there were several treatment notes showing Plaintiff's physical examinations to be normal, with Plaintiff having normal physical strength. Tr. 1590. In fact, there is evidence in the record showing Plaintiff being able to go to the gym, with a time noted in 2016 that she walked for 2.5 hours and did 100 squats. Tr. 2257, 2537, 2757, 2838, 2839, 3196. The ALJ also points out that Ms. Pfeiffer's opinion on Plaintiff's ability to lift 20 pounds contrasts with Plaintiff's own testimony at her 2016 hearing. Tr. 62, 73. There, Plaintiff affirmed she could lift up to 25 pounds

occasionally and 5-20 pounds frequently. *Id.* The ALJ is correct in pointing out that no other reports in the record corroborate Ms. Pfeiffer's opinion that Plaintiff must elevate her legs for 50% of a typical workday. In conclusion, the ALJ provided more than germane reasons to dismiss Ms. Pfeiffer's opinions on the grounds of inconsistency with the record and in turn, did not harmfully err.

**b. The ALJ properly rejected the assessments of Dr. Cohen.**

Richard W. Cohen, MD, attended Plaintiff's 2021 hearing with ALJ Lynch to give medical expert testimony regarding Plaintiff's mental health status. Dr. Cohen opined Plaintiff has depression that is severe with Beck scores going up to 36 with sleeping problems, energy problems, concentration problems, change in appetite, and a history of suicide ideations and attempts in the past. Tr. 1610. According to Dr. Cohen, Plaintiff also has a panic disorder, with her having panic attacks 5 times a week and PTSD. *Id.* Plaintiff reportedly represses and converts anxiety into physical pain, and has ADHD. *Id.* Dr. Cohen opined that if the stress of work were to be added to her daily activities, this would increase her panic attacks, irritability, anger outbursts, issues with sleep, energy and concentration to the point she would miss more than three days of work per month. Tr. 1611, 1613. Two noteworthy errors were made by Dr. Cohen during the hearing, the first being his confusion with the opinions of Dr. Cole and Ms. Bauman, *see* Tr. 1612-13, and his statement that Dr. Cole also suggested Plaintiff's mental impairments met the "C" criteria. *Id.* The ALJ took both mistakes into consideration when evaluating Dr. Cohen's medical opinions, and in turn, discounted them based on inconsistency with the record. Tr. 1591. Though Dr. Cohen is considered an acceptable medical source, there is still no heightened standard to which the ALJ must have evaluated his opinion on because Dr. Cohen did not treat or examine Plaintiff. Dr. Cohen is considered a non-examining physician.

The conclusion of a non-examining expert is generally entitled to less weight than the conclusion of an examining physician; However, giving the examining physician's opinion more weight than the non-examining expert's opinion does not mean that the opinions of non-examining sources and medical advisors are entitled to no weight. *Andrews v. Shalala*, 53 F.3d 1035, 1037. The ALJ did not fail to give Dr. Cohen's opinion weight, but in turn contrasted his opinion with those of the entire record and subsequently gave his opinions little weight.

The ALJ pointed out several inconsistencies in the record to make his determination. For example, the ALJ pointed out that Dr. Cohen testified Dr. Cole "thought there was C criteria," but Dr. Cole did not actually form such opinion in his psychodiagnostic exam, nor in his medical source statement. Tr. 1591. The ALJ made the determination at step three that Plaintiff's mental health impairments did not rise to "C" criterion:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not show the claimant received medical treatment, mental health therapy, psychosocial support, or that the claimant lived in a highly structured setting that was ongoing and that diminished the symptoms and signs of the claimant's mental disorders (see 12.00G2b); and that the claimant had marginal adjustment (minimal capacity to adapt to changes in the environment or to demands that were not already part of the claimant's daily life (see 12.00G2c)). Tr. 1584.

Plaintiff argues Dr. Cole's opinion that Plaintiff had marked limitations in her ability to adapt to changes in a routine work setting equated to the "C" criterion of having a minimal capacity to adapt to changes or additional demands on top of her daily routines. Pl.'s Br. 13. However, the ALJ found Plaintiff had mild limitations in adapting or managing herself. Tr. 1584. He points to the fact that Plaintiff's grooming and attire were consistently adequate, as was her way of living independently, despite receiving assistance from her mother for her parental duties. *Id.* There is sufficient support in the record supporting the ALJ's conclusions. For example, in Dr. Dooley's exam, he notes:

17 - Opinion and Order

> Ms. Corbin currently lives in a house with her son, who is on disability for autism, and her mother. Her mother appears to share a lot of the parenting load. She was casually yet neatly groomed. She was tangential in the course of the interview process. She had a meandering style and was vague, and appeared to be somewhat elusive, stating at one point, "I'm not an expert," even though the questions were with regards to herself. She demonstrated appropriate eye contact. There was no obvious evidence of malodor. And she presented as somewhat socially and psychologically sophisticated . . ." Tr. 2836.

This contrasts with Dr. Cohen's opinions that Plaintiff would have serious limitations managing herself and her affect. Tr. 1612. In fact, the record shows that Plaintiff finds time in the day to meditate, draw, conduct acupuncture, paint, drive her car, go to the gym, read, complete household chores, cook, and get on the computer. Tr. 2837-39, 76-77, 972, 1497, 2764, 291-292. At present, the inquiry is whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled. *Jamerson v. Chater*, 11 F.3d 1064, 1067 (9th Cir. 1997). The ALJ reasonably found several instances of inconsistencies in the record of Plaintiff's mental constitution and physical activity to discount Dr. Cohen's testimony. Therefore, there was substantial evidence supporting the ALJ's conclusions, and he did not commit harmful error.

## ORDER

The ALJ properly evaluated the medical opinion evidence from Dr. Cole, Ms. Bauman, Ms. Pfeiffer and Dr. Cohen. For the reasons set forth above, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this 25th day of July, 2023.

MARK D. CLARKE
United States Magistrate Judge